**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**(AT COVINGTON)**
**CIVIL ACTION NO. 12-CV-268-WOB-JGW**

SUSAN PASTOR-RICHARD, GEORGE
McMEEN, LOUIS MEYERS AND RANDALL BROWN                    PLAINTIFFS

v.

GOODMAN GLOBAL, INC., GOODMAN
MANUFACTURING COMPANY, L.P.,
GOODMAN COMPANY, L.P.                                      DEFENDANTS

---

**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

---

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Goodman Global, Inc.,

Goodman Manufacturing Company, L.P., and Goodman Company, L.P. file this Motion to

Dismiss Plaintiffs' First Amended Complaint ("Amended Complaint").  For the reasons set forth

in the attached Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs'

First Amended Complaint, the Court should dismiss the Amended Complaint with prejudice.

Respectfully submitted,


*/s/ Jeffrey C. Mando*
Jeffrey C. Mando, Esq. (#43548)
ADAMS, STEPNER,
WOLTERMANN & DUSING, PLLC
40 West Pike St.
Covington, KY 41012
859.394.6200
859.392.7263 – Fax
jmando@aswdlaw.com

1

*/s/ Theodore M. Grossman*

Theodore M. Grossman, Esq. (OH #37591)
(admitted pro hac vice)
Louis A. Chaiten, Esq. (OH #72169)
(admitted pro hac vice)
JONES DAY
901 Lakeside Avenue
Cleveland, OH  44114
216.586.3939
216.579.0212 – Fax
tgrossman@jonesday.com
lachaiten@jonesday.com

*Attorneys for Defendants, Goodman Global, Inc., Goodman Manufacturing Company, L.P., and Goodman Company, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, with attached Memorandum of Law in Support of the Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint and exhibits thereto, was filed electronically on this the **25**th day of February, 2013, through the Court's electronic filing system.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Jeffrey C. Mando*

Counsel for Defendants

2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**(AT COVINGTON)**
**CIVIL ACTION NO. 12-CV-268-WOB-JGW**

**SUSAN PASTOR-RICHARD, GEORGE**
**McMEEN, LOUIS MEYERS AND RANDALL BROWN**                    **PLAINTIFFS**

**v.**

**GOODMAN GLOBAL, INC., GOODMAN**
**MANUFACTURING COMPANY, L.P.,**
**GOODMAN COMPANY, L.P.**                                     **DEFENDANTS**

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

---

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... iii

STATEMENT OF THE ISSUES ............................................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................................... 2

FACTUAL AND PROCEDURAL BACKGROUND ................................................................. 5

ARGUMENT ............................................................................................................................ 9

I.      PLAINTIFFS' BREACH OF WARRANTY CLAIMS MUST BE DISMISSED .............. 9

    A.      Plaintiffs' Breach-Of-Warranty Claims Must Be Dismissed For Failure To Give The Required Notice Of An Alleged Breach ................................................ 10

    B.      Limitations In The Warranty Upon Which Plaintiffs Rely Expressly Bar The Relief They Seek ......................................................................................... 12

        1.      The Express Terms Of The Warranty Preclude Plaintiffs From Recovering The Monetary And Injunctive Relief They Seek ................ 12

        2.      Plaintiffs Fail To Adequately Plead Failure Of Essential Purpose Or Unconscionability Of The Warranty ................................................. 13

    C.      Plaintiffs Pastor-Richard And Brown May Not Maintain Breach of Warranty Claims Because They Lack The Essential Element Of Privity ............. 17

    D.      Plaintiffs' Claim For Breach Of Implied Warranty Of Merchantability Likewise Fails For Independent Reasons ............................................................ 19

II.     THE CONSUMER-PROTECTION-STATUTE CLAIMS FAIL, AS WELL .................. 22

    A.      Pastor-Richard's Kentucky Consumer Protection Act Claim Is Unsustainable ................................................................................................... 22

        1.      Pastor-Richard Lacks Standing To Assert A KCPA Claim ................... 22

        2.      Pastor-Richard's Claim Is Also Time-Barred ....................................... 23

        3.      Pastor-Richard Fails To Plead Facts Establishing The Essential Elements Of Her Claim ........................................................................ 24

    B.      McMeen Fails to Plead a Claim of Violation of the Texas Deceptive Trade Practices and Consumer Protection Act .............................................................. 29

        1.      McMeen's Claim is Time-Barred ......................................................... 29

2.    McMeen Fails To Plead Sufficient Facts To Make Out The Elements Of A DTPA Claim                                            31

C.    Meyers's Claim Of Violation Of The North Carolina Unfair And Deceptive Trade Practices Act Also Fails ............................................................33

1.    Meyers Fails To Plead Facts Establishing The Necessary Elements of An "Unfair Or Deceptive" Act Or Practice                     33

2.    Meyers Fails To Allege An Injury And Therefore Has No Standing    34

III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT ...................35

CONCLUSION ...................................................................................................................36

# TABLE OF AUTHORITIES

**CASES**

*Allen v. Abbott Labs.*,
 No. 11-146-DLB, 2012 WL 10508 (E.D. Ky. Jan 3, 2012)................................................18, 19

*Am. Mfg. Co. v. U.S. Shipping Bd. E.F. Corp.*,
 7 F.2d 565 (2d. Cir. 1925)..................................................................................................10

*Anderson v. Merck & Co.*,
 417 F. Supp. 2d (E.D. Ky. 2006) .....................................................................................22, 26

*Aqualon Co. v. Mac Equip., Inc.*,
 149 F. 3d 262 (4th Cir. 1998) ............................................................................................10

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)................................................................................................9, 27, 28

*Belanger v. BAC Home Loans Servicing, L.P.*,
 839 F. Supp. 2d 873 (W.D. Tex. 2011)..............................................................................15, 17

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007).........................................................................................................9, 4

*Bon Aqua Int'l, Inc. v. Second Earth, Inc.*,
 No. 1:10-CV-169, 2013 WL 357469 (M.D.N.C. Jan. 29, 2013) ...........................................34

*Booe v. Shadrick*,
 369 S.E.2d 554 (N.C. 1998)...............................................................................................36

*Boyce & Isley, PLLC v. Cooper*,
 568 S.E.2d 893 (2002) ......................................................................................................33

*Bradford v. Vento*,
 48 S.W.3d 749 (Tex. 2001)................................................................................................32

*Burgett v. Troy-Bilt LLC*,
 No. 12-25-ART, 2012 WL 5384702 (E.D. Ky. Nov. 1, 2012) ...............................................12

*Capitol Cadillac Olds, Inc. v. Roberts, Ky.*,
 813 S.W.2d 287 (1991).....................................................................................................28

*Carcano v. JBSS, LLC*,
 684 S.E.2d 41 (N.C. App. 2009)........................................................................................33, 34

*C.A.R.S. Protection Pluc, Inc. v. Larry Stigers Equip., Trailers & Trucks, LLC*,
 No. 2007-CA-001542-MR, 2009 WL 2971542 (Ky. Ct. App. Sept. 18, 2009) .....................24

*Cataldo v. U.S. Steel Corp.*,
676 F.3d 542 (6th Cir. 2012) ..................................................................................8

*Chesbrough v. Visiting Physicians Ass'n*,
655 F.3d 461 (6th Cir. 2011) ................................................................................26

*Childress v. Interstate Battery Sys. of Am. Inc.*,
No. 1:09CV-54-M., 2010 WL 60023 (W.D. Ky. Feb. 18, 2010) ...........................18

*Coker v. DaimlerChrysler Corp.*,
617 S.E.2d 306 (N.C. Ct. App. 2005) ...................................................................34

*Compex Int'l Co. v. Taylor*,
209 S.W.3d 462 (Ky. 2007)............................................................................12, 18

*Conseco Fin. Serv. Corp. v. Wilder*,
47 S.W.3d 335 (Ky. 2001) ...................................................................................16

*Cook v. State Farm Mut. Auto. Ins. Co.*,
No. 2002-CA-000801-MR, 2004 WL 2011375 (Ky. Ct. App. Sept. 10, 2004) .....................23

*Cox v. Motor Car Co. v. Castle*,
402 S.W.2d 429 (Ky. 1966) .................................................................................12

*Doe v. Boys Clubs of Greater Dallas, Inc.*,
907 S.W.2d 472 (Tex. 1995)................................................................................31

*E. Air Lines, Inc. v. McDonnell Douglas Corp.*,
532 F.2d 957 (5th Cir. 1976) ...............................................................................10

*Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*,
533 S.E.2d 827 (N.C. App. 2000)........................................................................34

*Fed. Sav. & Loan Ins. Corp. v. Quality Hotels & Resorts, Inc.*,
928 F.2d 399 (4th Cir. 1991) ...............................................................................36

*Flint v. Hewlett-Packard Co.*,
No. 3:10-CV-597, 2011 WL 3844193 (W.D. Ky. Aug. 30, 2011).........................12

*Ford Motor Co. v. Mayes*,
575 S.W.2d 480 (Ky. Ct. App. 1979) ...................................................................14

*Fortune Prod. Co. v. Conoco, Inc.*,
52 S.W.3d 671 (Tex. 2000)............................................................................35, 36

*Gooch v. E.I. du Pont de Nemours & Co.*,
40 F. Supp. 2d 863 (W.D. Ky. 1999)...............................................................14, 16

iv

*Harman v. Sullivan Univ. Sys., Inc.*,
   No. 03-738-C, 2005 WL 1353752 (W.D. Ky. June 6, 2005)....................................................28

*Hayduk v. Lanna*,
   775 F.2d 441 (1st Cir. 1985)........................................................................................27

*Hill v. BASF Wyandotte Corp.*,
   696 F.2d 287 (4th Cir. 1982) ......................................................................................14

*Hollon v. Consumer Plumbing Recovery Ctr.*,
   No. 5:05-414-JMH, 2006 WL 1360805 (E.D. Ky. May 14, 2006) ..................................26, 27

*Hooters of Am., Inc. v. Phillips*,
   39 F. Supp. 2d 582 (D.S.C. 1998)................................................................................15

*J & E Constr., Inc. v. Bobcat Enters., Inc.*,
   No. 07-235, 2008 WL 3982683 (E.D. Ky. Aug 26, 2008) ................................................12, 14

*JCW Electronics, Inc. v. Garza*,
   257 S.W.3d 701 (Tex. 2008).......................................................................................35

*KPMG Peat Marwick v. Harrison Cty. Housing Fin. Corp.*,
   988 S.W.2d 746 (Tex. 1999).......................................................................................30

*Lancaster Glass Corp. v. Philips ECG, Inc.*,
   835 F.2d 652 (6th Cir. 1987) ......................................................................................21

*Lochnivar Corp. v. Meyers*,
   930 S.W.2d 182 (Tex. App. 1996)................................................................................10

*Mass. Mut. Life v. Watson*,
   Nos. 12-19-KKC, 12-151-JBC, 2012 WL 4936504 (E.D. Ky. Oct. 16, 2012).......................23

*Melton v. Family First Mort. Corp.*,
   576 S.E.2d 365 (N.C. App. 2003).............................................................................33, 34

*Moore v. Mack Trucks*,
   40 S.W.3d 888 (Ky. Ct. App. 2001) .............................................................................14

*Neuser v. Carrier Corp.*,
   No. 06-C-645-S, 2007 WL 1470855 (W.D. Wis. May 15, 2007) .........................................17

*Odom v. Ford Motor Co.*,
   95 S.E.2d 601 (S.C. 1956) .........................................................................................19

*Republic Bank & Trust Co. v. Bear Stearns & Co.*,
   683 F.3d 239 (6th Cir. 2012) ......................................................................................27

v

*Roberts v. Solideal Tire, Inc.*,
No. 06-14-DLB, 2007 WL 2990536 (E.D. Ky. Oct. 10, 2007) ...............................................17

*Rudd Constr. Equip. Co. v. Clark Equip. Co.*,
735 F.2d 974 (6th Cir. 1984) ..............................................................................................14

*Sanchex v. Guerrero*,
885 S.W.2d 487 (Tex. App. 1994)........................................................................................32

*Schnuerle v. Insight Commc'ns Co.*,
376 S.W.3d 561 (Ky. 2012) ................................................................................15, 16, 17

*Shane v. Bunzl Dist. USA, Inc.*,
200 F. App'x 397 (6th Cir. 2006) .......................................................................................36

*SHS INV. v. Nationwide Mut. Ins. Co.*,
798 F. Supp. 2d 811 (S.D. Tex. 2011) .................................................................................31

*In re Sigg Switzerland (USA), Inc. Aluminum Bottles Mktg. & Sales Practices Litig.*,
MDL No. 2137, 2011 WL 159940 (W.D. Ky. Jan. 12, 2011) ...............................................20

*Simpson v. MSA of Myrtle Beach, Inc.*,
644 S.E.2d 663 (S.C. 207) ............................................................................................15, 17

*Sparks v. Re/Max Allstar Realty*,
55 S.W.3d 343 (Ky. Ct. App. 2000) .....................................................................................28

*Standard Alliance Indus., Inc. v. Black*,
587 F. 2d 813 (6th Cir. 1978) ......................................................................................10, 11

*Strauss v. Ford Motor Co.*,
439 F. Supp. 2d 680 (N.D. Tex. 2006) .................................................................................20

*Sw. Olshan Found., LLC v. Gonzales*,
345 S.W.3d 431 (Tex. App. 2011).......................................................................................30

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ..............................................................................................28

*Tallon v. Lloyd & McDaniel*,
497 F. Supp. 847 (W.D. Ky. 2007)......................................................................................22

*Tietsworth v. Sears, Roebuck & Co.*,
No. 5:09-CV-00288-JF, 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) ..........................20, 21

*Tillman v. Commercial Credit Loans, Inc.*,
655 S.E.2d 362 (N.C. 2008).........................................................................................15, 17

*Todd v. Capital One Fin. Corp.*,
   No. 3:07-CV-189-S, 2007 WL 3306097 (W.D. Ky. Nov. 6, 2007) ................................22, 23

*U.S. v. Stevens*,
   605 F. Supp. 2d 863 (W.D. Ky. 2008) ................................................................................35

*U.S. Achievement Acad., LLC v. Pitney Bowes, Inc.*,
   458 F. Supp. 2d 389 (E.D. Ky. 2006) ................................................................................16

*United States v. AVX Corp.*,
   962 F.2d 108 (1st Cir. 1992) ................................................................................................9

*Ward v. Appalachian Fed. Credit Union*,
   No. 06-CV-48-DLB, 2006 WL 897224 (E.D. Ky. Apr. 6, 2006) ........................................23

*Williams v. Duke Energy Int'l, Inc.*,
   681 F.3d 788 (6th Cir. 2012) ...............................................................................................9

*Williams v. Fulmer*,
   695 S.W.2d 411 (Ky. 1985) ................................................................................................18

STATUTES

16 C.F.R. 700.10 ......................................................................................................................13

Ky. Rev. Stat. Ann. § 355.2-314(2)(c) ....................................................................................20

Ky. Rev. Stat. Ann. § 355.2-318 .............................................................................................18

Ky. Rev. Stat. Ann. § 355.2-607 (3)(a) ...................................................................................10

Ky. Rev. Stat. Ann. § 355.2-719 .............................................................................................12

Ky. Rev. Stat. Ann. § 367.170(1) ...........................................................................................24

Ky. Rev. Stat. Ann. § 367.220(1) ...........................................................................................24

Ky. Rev. Stat. Ann. § 367.220(5) ...........................................................................................23

N.C. Gen. Stat. § 25-2-314(2)(c) ............................................................................................20

N.C. Gen. Stat. § 25-2-607(3)(a) ............................................................................................10

N.C. Gen. Stat. § 25-2-719 .....................................................................................................12

N.C. Gen. Stat. § 75-1.1 ..........................................................................................................33

S.C. Code Ann. § 36-2-314(2)(c) ............................................................................................20

S.C. Code Ann. § 36-2-07(3)(a)..................................................................................................10

S.C. Code Ann. § 36-2-719..........................................................................................................12

Tex. Bus & Comm. Code Ann. § 2.314(b)(3) ............................................................................20

Tex. Bus & Comm. Code Ann. §  2.607(c)(1).............................................................................10

Tex. Bus & Comm. Code Ann.§  2.719........................................................................................12

Tex. Bus & Comm. Code Ann. § 17.45(5) ..................................................................................32

Tex. Bus & Comm. Code Ann. § 17.46(a) ..................................................................................29

Tex. Bus & Comm. Code Ann. § 501...........................................................................................29

Tex. Bus & Comm. Code Ann. § 17.505(a) ................................................................................29

Tex. Bus & Comm. Code Ann. § 17.565......................................................................................29

Uniform Commercial Code § 2-314(2)(c) ...................................................................................20

**OTHER AUTHORITIES**

18 Williston, *A Treatise on the Law of Contracts,* §  52:45 (4th ed. 1990)....................................35

67A Am. Jur. 2d Sales §  250.......................................................................................................14

**STATEMENT OF THE ISSUES**

I.      Do Plaintiffs state a sustainable claim for breach of warranty where (a) they failed to meet the statutory notice requirement that is a prerequisite to any such claim; (b) the express limitation-of-remedies provision in the warranty on which they attempt to rely precludes the monetary and injunctive relief they seek; and (c) at least two of the four Plaintiffs lack privity with any Defendant?

II.     Do Plaintiffs state a claim under the Kentucky, Texas, or North Carolina consumer-protection statutes where (a) the only Kentucky Plaintiff to this action lacks a buyer-seller relationship with any Defendant as required for a claim under the Kentucky statute; (b) any claims under the Kentucky and Texas statutes are barred by a two-year statute of limitations; (c) Plaintiffs fail to meet Rule 8/*Twombly*'s pleading requirements, much less Rule 9(b)'s exacting standard for pleading fraudulent or deceptive conduct; and (d) the only North Carolina Plaintiff has additionally failed to plead a legally protected interest sufficient to confer standing under the North Carolina Act?

III.    Do Plaintiffs state a claim for unjust enrichment where the law precludes unjust-enrichment claims to redress alleged violation of warranty rights?

1

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Susan Pastor-Richard has amended her complaint to add three new plaintiffs and a smattering of new allegations and claims. But the Amended Complaint fares no better than the original Complaint, and should be dismissed in its entirety.

Claiming that Plaintiffs' central air conditioner or heating units contain defective evaporator coils, the Amended Complaint accuses Defendants Goodman Gobal, Inc., Goodman Manufacturing Company, L.P., and Goodman Company, L.P. of breach of warranty (both express warranty and implied warranty of merchantability); violations of the consumer protection acts of Kentucky, Texas, and North Carolina; and unjust enrichment. In addition to their own claims, Plaintiffs purport to bring these same causes of action on behalf of a putative class, which they define as "[a]ll persons residing in the United States who purchased a Goodman Unit since January 2007" (Am. Compl. ¶ 16), as well as four State-specific subclasses (*id.* ¶ 17).

All of Plaintiffs claims fail, however, for multiple independent reasons.

*Breach of warranty*: The claims for breach of warranty (express or implied) suffer from two common legal deficiencies. First, no Plaintiff fulfilled the statutory requirement of notifying Defendants of an alleged breach of warranty before filing a lawsuit. This notice requirement is no mere formality, but rather is designed to allow for potential resolution of individual grievances before a buyer may resort to litigation, much less a purported class action on behalf of a nationwide class.

Second, the warranty on which Plaintiffs rely expressly limits the remedy for any defective part (such as an evaporator coil) to a free replacement part. But Plaintiffs do not seek a free replacement part. They instead seek broad monetary and injunctive relief that is barred by the warranty's express limitations. Plaintiffs try to plead around this deficiency by arguing that

2

the warranty limitation is unenforceable, either because it defeats the warranty's essential purpose or because it is unconscionable. But the limited warranty cannot fail its essential purpose when—as Plaintiffs themselves have acknowledged here—a no-charge replacement part for any allegedly defective evaporator coil fully restores the function of their Goodman units. And Plaintiffs cannot possibly meet the extraordinary burden of showing unconscionability, because the warranty is legible, easily understood, fair, and common in the industry.

Beyond these generally applicable problems with Plaintiffs' warranty claims, the Amended Complaint also fails to cure several more particular problems with them. For one, Pastor-Richard and Brown cannot establish the fundamental element of privity of contract because neither of them purchased the Goodman units whose alleged defects have resulted in out-of-pocket costs to them. For another, Plaintiffs' claim for breach of the implied warranty of merchantability fails for the additional independent reason that there can be no breach of an implied warranty of merchantability where, as here, the product is fit for the ordinary purpose of cooling or heating their homes. All that Plaintiffs have pled is that they obtained, or could have obtained, replacement of a particular part pursuant to a warranty that restored any alleged deficiencies and allowed their units to operate at full strength. In any event, an air conditioner or heater would not be unfit for its ordinary purpose even if it were not working to the precise degree its owner would prefer.

*Kentucky Consumer Protection Act*: Plaintiffs' allegations of fraud and deceptive practices under the Kentucky Consumer Protection Act (KCPA)—applicable only to Pastor-Richard, the only Kentucky Plaintiff—likewise fail to state a claim upon which relief can be granted. Pastor-Richard lacks the privity of contract between her and any Defendant necessary to establish standing. Even if she had standing, her KCPA claims would be time-barred under

3

the Act's two-year statute of limitations. And Pastor-Richard otherwise fails to plead facts establishing the necessary elements of a KCPA claim. Her conclusory allegations fall well short of what is required under Rule 8 and *Twombly,* much less Rule 9(b)'s more exacting standard for pleading fraudulent and deceptive conduct.

*Texas Deceptive Trade Practices and Consumer Protection Act*: Plaintiffs' Texas Deceptive Trade Practices and Consumer Protection Act claim, applicable only to McMeen (the only Texas Plaintiff), also falls short. The Texas claim, like Pastor-Richard's KCPA claim, is time-barred and does not meet the heightened pleading standards applicable under the Texas Act.

*North Carolina Unfair and Deceptive Trade Practices Act*: Plaintiffs also attempt to plead violation of the North Carolina Unfair and Deceptive Trade Practices Act, a statute whose protections apply only to Meyers (the only North Carolina resident). But Meyers, too, has failed to plead the elements of his claim with particularity. In addition, Meyers has failed to plead an invasion of a legally protected interest, as he must to have standing to bring a claim under the North Carolina Act.

*Unjust enrichment*: Plaintiffs' last-resort effort at pleading unjust enrichment also fails. An unjust-enrichment claim is unavailable to redress simultaneously alleged violations of warranty rights.

For the foregoing reasons, explained more fully below, the Amended Complaint should be dismissed in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are four individuals who own, and claim to have had various issues with, Goodman™ central air conditioners or heating units.

*Ms. Pastor-Richard*: According to the Amended Complaint, Plaintiff Susan Pastor-Richard, a resident of Kentucky, bought and moved into a house in 2009 that "came equipped"

4

with a Goodman central air-conditioning unit.  (Am. Compl. ¶¶ 5, 53.)  She alleges that in summer 2010 her home was cooler on the first floor than on the second floor, but that her air conditioner was otherwise "working properly."  (*Id.* ¶ 54.)  The following May, her air conditioner is alleged to have "stopped emitting any cool air."  (*Id.* ¶ 55.)  According to Pastor-Richard, "Morris Heating and Cooling" told her that the "Freon" was low and that an "O-ring" in the unit had to be replaced.  (*Id.*)  Pastor-Richard paid $192.50 for these repairs.  (*Id.*)  That solved the problem and she had no further issues with her air conditioner until late May 2012, when her air conditioner again "stopped emitting any cool air."  (*Id.* ¶ 56.)  This time she contacted a different servicer (Precision Air rather than Morris Heating and Cooling) to fix the problem.  (*Id.*)  Precision Air allegedly told her the air conditioner was leaking "Freon" from a hole in the evaporator coil, and that she would need to replace the evaporator coil to "permanently solve the problem."  (*Id.* ¶¶ 56-57.)  Rather than contact Goodman and seek a free replacement part, Pastor-Richard opted for a "temporary fix," *i.e.*, adding "Freon" to her unit at a cost of $500.  (*Id.*)  A few months later, and apparently not happy with her decision to go with the "temporary fix," Pastor-Richard demanded from Goodman Global Group's CEO, Dave Smith, that Goodman repair her air conditioner free of charge and then reimburse her the $500 she had paid for repairs.  (*Id.* ¶ 58.)  Goodman Manufacturing Company responded that Goodman's warranty does not cover cost of repair, only the cost of replacement parts.  (*Id.* ¶ 59.)  Pastor-Richard does not allege any further communication with any Defendant before filing this lawsuit.

*Mr. McMeen*:  Plaintiff George McMeen, a resident of Texas, alleges that he paid Reliant Air Conditioning ("Reliant") to install three Goodman units in his home in January 2008.  (Am. Compl. ¶¶ 6, 61.)  In August 2010, he claims, one of those units "stopped emitting any cool air."

(*Id.* ¶ 62.)  He called Reliant, which determined that the evaporator coil needed to be replaced and performed this service at no cost to McMeen.  (*Id.*)  He experienced no further problem until April 2012, when he noticed that a different Goodman unit "stopped emitting any cool air."  (*Id.* ¶ 63.)  Once again he called Reliant, which added additional refrigerant and charged McMeen $353.60.   After allegedly continuing to experience what he considered inadequate cooling, McMeen contacted Javco Mechanical.  (*Id.* ¶ 63.)  The Javco Mechanical technician determined that the evaporator coil in the now over-four-year-old unit needed to be replaced; it performed this service and charged McMeen $750. (*Id.*)  McMeen pleads that in both the 2010 and 2012 incidents, his service technicians contacted Goodman which, pursuant to the applicable warranty, provided the replacement evaporator coils free of charge.  (*Id.* ¶ 64.)

*Mr. Meyers*:  Plaintiff Louis Meyers, a resident of North Carolina, had Green Country Service ("Green") install a Goodman air conditioner in his home in February 2008.  (Am. Compl. ¶¶ 7, 65.)  That summer, Meyers alleges, his Goodman unit "was not cooling his house effectively."  He contacted Green, which diagnosed and resolved the problem with no charge to Meyers.  (*Id.* ¶ 66.)  Two years later, in June 2010, after Meyers's Goodman unit allegedly "again failed to cool his house effectively," Green once again performed the necessary repair free of charge.  (*Id.* ¶ 67.)  In July 2012, Meyers contacted Green twice when his Goodman unit "failed to cool his house" and then "failed once more"; on the second of those two visits, the Green technician finally determined that the unit needed a new evaporator coil and contacted Goodman for a free replacement part, per the warranty.  (*Id.* ¶¶ 68-69.)  The total bill for Green's services was $879.53.  (*Id.* ¶ 68.)  Meyers pleads that he then wrote a letter to an unspecified Goodman entity asking to be reimbursed for repair costs.  (*Id.* ¶ 70.)  He, like Pastor-Richard, received a letter in response directing his attention to the warranty, which provides that

6

Goodman will supply replacement parts but will not be responsible for labor costs. (*Id.*) Meyers does not allege that he had any further communication with any Defendant.

*Mr. Brown*: Plaintiff Randall Brown is a resident of South Carolina. (Am. Compl. ¶ 8.) He alleges that in March 2008, he moved into a newly-renovated home that had two Goodman units installed in it. (*Id.* ¶ 71.) In October 2008, he replaced one of those two units with a new Goodman unit, so that his home now contains a three-ton unit installed in his home prior to his occupation of it, and a two-ton unit that he purchased himself. (*Id.*) In October 2009, according to the Amended Complaint, Brown "noticed that his [three-ton unit] was running for an unusually long amount of time." (*Id.* ¶ 73.) He contacted Custom Climate Heating and Air ("Custom Climate"), which determined that the evaporator coil needed to be replaced and procured a cost-free replacement part from a Goodman distributor, pursuant to warranty. (*Id.*) Custom Climate charged Brown $648.00 for its work. (*Id.*) In December 2011, Brown "noticed that his [two-ton unit] was running for an unusually long amount of time." (*Id.* ¶ 74.) Custom Climate once again procured a replacement part from Goodman free of charge, and this time did not charge Brown for its work. (*Id.*) In January 2013, "Brown noticed that his previous two electricity bills had increased significantly." (*Id.* ¶ 75.) Custom Climate determined that the three-ton unit needed a new evaporator coil, and procured a free replacement part for him. (*Id.* ¶ 76.) Custom Climate charged Brown $918 for its work. (*Id.*)

* * *

Beyond these Plaintiff-specific facts, Plaintiffs generally allege that Goodman heating and air-conditioning units "contain defective evaporator coils" that leak refrigerant, and that Defendants knew or should have known about the supposed defect but continued to advertise the high quality of Goodman products. (Am. Compl. ¶¶ 2-4, 20.) They further allege that Goodman

7

(Manufacturing Company) expressly warrants to furnish a no-charge replacement part for any part that is "found to be defective due to workmanship or materials under normal use and maintenance." (*Id.* ¶ 45) Three of the four Plaintiffs took advantage of this warranty and obtained replacement parts free of charge. But Plaintiffs complain that the warranty (i) does not cover "labor, freight, or any [other] cost associated with the service, repair or operation of the unit" (*id.* (quoting Goodman Limited Warranty for ARUF series, attached here as Ex. A))[1]; (ii) disclaims any liability for incidental or consequential damages, "including but not limited to extra utility expenses or damages to property" (*id.* ¶ 46; Ex. A); and (iii) expressly limits liability for any implied warranties of merchantability and fitness for particular purpose to the duration of that warranty. (Am. Compl. ¶¶ 44; Ex. A.)

On November 7, 2012, Plaintiff Pastor-Richard filed a putative class action against three different Goodman entities in Kentucky state court. Defendants removed the case to this Court, invoking diversity jurisdiction under 28 U.S.C. § 1332(a) and the Class Action Fairness Act, and moved to dismiss Pastor-Richard's complaint. Pastor-Richard filed an Amended Complaint, now joined by the other three named Plaintiffs. Plaintiffs now assert claims for (1) breach of express warranty, (2) breach of the implied warranty of merchantability, (3) violation of the Kentucky Consumer Protection Act, (4) violation of the Texas Deceptive Trade Practices and Consumer Protection Act, (5) violation of the North Carolina Unfair and Deceptive Trade Practices Act, and (6) unjust enrichment.

---

[1] The warranty is referenced in Plaintiff's Amended Complaint and therefore properly before this Court. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 555 (6th Cir. 2012).

**ARGUMENT**

To survive a motion to dismiss, Plaintiffs' Amended Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 799 (6th Cir. 2012). Its factual allegations must "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and establish "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. That the Court must accept any well-pleaded factual allegations as true for the purpose of this motion "does not mean . . . that [the Court] must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992). Neither "naked assertion[s]" nor "conclusory statements" are sufficient to state a claim. *Iqbal*, 556 U.S. at 678. What is more, with respect to allegations of fraud or deception, Plaintiffs are required to go even farther, and must plead "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

Measured by these standards, Plaintiffs' Amended Complaint falls well short.

**I.    PLAINTIFFS' BREACH OF WARRANTY CLAIMS MUST BE DISMISSED.**

Plaintiffs' breach-of-warranty claims fail for multiple independent reasons. To begin with, Plaintiffs' failure to fulfill the statutory notice requirement bars all of them from bringing suit for breach of warranties. Further, the warranty upon which Plaintiffs rely contains a limitation-of-liability clause that precludes them from recovering the relief they seek. And Pastor-Richard's and Brown's claims fail for the additional reason that they purchased homes, not air conditioners, and therefore lack privity of contract with any Defendant.

    **A.    Plaintiffs' Breach-Of-Warranty Claims Must Be Dismissed For Failure To Give The Required Notice Of An Alleged Breach.**

9

To begin with, Plaintiffs' breach-of-warranty claims must be dismissed because Plaintiffs failed to fulfill the necessary statutory notice requirement.  Warranty claims are governed by Article 2 of the Uniform Commercial Code.  Section 2-607(3)(a) of the U.C.C., which has been adopted in relevant part without change by Kentucky, Texas, North Carolina, and South Carolina, provides that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  *See* Ky. Rev. Stat. Ann. § 355.2-607(3)(a); Tex. Bus. & Comm. Code Ann. § 2.607(c)(1); N.C. Gen. Stat. § 25-2-607(3)(a); S.C. Code. Ann. § 36-2-07(3)(a).  "The notice 'of the breach' required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of buyer's claim that they constitute a breach. The purpose of the notice is to advise the seller that he must meet a claim for damages, as to which, rightly or wrongly, the law requires that he shall have early warning."  *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 972 (5th Cir. 1976) (quoting *Am. Mfg. Co. v. U. S. Shipping Bd. E. F. Corp.*, 7 F.2d 565, 566 (2d Cir. 1925) (Hand, J.)).  Thus, the disgruntled buyer must give the seller express notice that he considers the seller to be in breach of their agreement.  *Standard Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 825-27 (6th Cir. 1978); *Aqualon Co. v. Mac Equip, Inc.*, 149 F.3d 262, 266-67 (4th Cir. 1998); *Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 189 (Tex. App. 1996) ("Failure to notify the seller of the breach, thereby allowing the seller an opportunity to cure, bars recovery on the basis of breach of warranty.").  When a plaintiff has failed to give notice, he has no right to judicial review of his breach-of-warranty claims.  *See Standard Alliance*, 587 F.2d at 828 (plaintiff's failure to give notice that it considered defendant to be in breach of warranty was fatal, even when underlying claim appeared to be meritorious).  Because the notice-of-breach requirement "operates as a condition precedent to any recovery, the burden of proof is on

the plaintiff to show that notice was given within a reasonable time." *Id. at* 823.  Requiring Plaintiffs to provide notice of breach before pursuing litigation, moreover, is no mere formality, but rather is designed to allow for potential resolution of individual grievances before resort to litigation, much less a purported class action on behalf of a nationwide class.  *E.g., id.* at 825 ("We do not know whether this lengthy, acrimonious lawsuit could have been settled beforehand. We do know that Standard Alliance's failure to give notice [of alleged breach] precluded the possibility of compromise.").

None of the four plaintiffs has pled that he or she gave the required notice to Defendants. Plaintiffs McMeen and Brown have pled no contact with Defendants whatsoever.  (Am. Compl. ¶¶ 64, 73, 76) (replacement parts obtained from Goodman Manufacturing Co. not by plaintiffs, but via service technicians).  Pastor-Richard and Meyers both plead that they wrote letters asking Goodman to cover the costs of repairs to their air conditioning units.  (Am. Compl. ¶¶ 58, 70.) But writing a letter asking that the company cover repair costs is a far cry from giving express notification that the buyer considered Defendants to be in breach, much less that the buyer considers the warranty's replacement-party remedy itself to be a breach "and that perhaps litigation was contemplated."  *See Standard Alliance*, 587 F.2d at 827 (finding no notice and barring consideration of claims when "[seller] was alerted that the machine was defective, but not alerted that its repair efforts were defective. We cannot allow notice of one breach to be carried over to create notice of a subsequent related, but distinct, breach.").  Indeed, after McMeen and Brown each received a letter explaining that Goodman's warranty covers a free replacement part, but not repair costs, that appeared to be the end of the matter.  Neither of them alleges any further communication with any Defendant before filing this lawsuit.

11

Because Plaintiffs failed to give Defendants notice that they considered Defendants to be in breach of express and implied warranties and were contemplating litigation, their claims are barred.

**B.     Limitations In The Warranty Upon Which Plaintiffs Rely Expressly Bar The Relief They Seek.**

Even if Plaintiffs could somehow overcome the notice problem, they still cannot recover on their claims because the warranty upon which they rely precludes the relief they are seeking. And none of Plaintiffs' allegations even remotely suggests that the warranty's limited remedy is somehow unenforceable.

**1.     The Express Terms Of The Warranty Preclude Plaintiffs From Recovering The Monetary And Injunctive Relief They Seek.**

It is of course entirely permissible for a warranty to limit remedies for a breach of warranty, whether express or implied. *See Burgett v. Troy-Bilt LLC*, No. 12-25-ART, 2012 WL 5384702, at *6 (E.D. Ky. Nov. 1, 2012) (extending remedial limitations contained in express warranty to bar damages claims for breach of implied warranties as well). "Contract liability for breach of warranty arises not from the common law, but from the terms of the contract and the statutory provisions of the U.C.C." *Id.* (quoting *Compex Int'l Co., Ltd. v. Taylor*, 209 S.W.3d 462, 465 (Ky. 2006)). The statutory provision at issue here is Section 2-719 of the U.C.C. *See* Ky. Rev. Stat. § 355.2-719; Tex. Bus. & Com. Code Ann. § 2.719; N.C. Gen. Stat. § 25-2-719; S.C. Code. Ann. § 36-2-719. The law is clear that a seller may "validly limit[] the remedy to replacement of defective parts." *Cox Motor Car Co. v. Castle*, 402 S.W.2d 429 (Ky. 1966). *See also J & E Constr., Inc. v. Bobcat Enters., Inc.*, No. 07-235, 2008 WL 3982683, at *6 (E.D. Ky. Aug. 26, 2008); *Flint v. Hewlett-Packard Co.*, No. 3:10-CV-597, 2011 WL 3844193, at *4 (W.D. Ky. Aug. 30, 2011) (finding, where warranty limited buyer's remedy to "repair or

12

replacement," that plaintiff was precluded from recovering damages under his breach of warranty claims or his other causes of action).

The warranty covering Plaintiffs' air conditioners contains just such a limitation. It clearly provides that the manufacturer's only responsibility, and therefore a buyer's only remedy, is a no-charge replacement of "any part that is found to be defective due to workmanship or materials under normal use and maintenance." (Ex. A; Am. Compl. ¶ 45.) There is nothing wrong with such a limitation, which is common enough that there is a Federal Trade Commission regulation acknowledging its use. 16 C.F.R. § 700.10 ("Under a limited warranty that provides only for replacement of defective parts and no portion of labor charges, section 102(c) [of the Magnuson-Moss Warranty Act] prohibits a condition that the consumer use only service (labor) identified by the warrantor to install the replacement parts."). And Plaintiffs do not seek replacement parts. Instead, they bring a putative class action lawsuit seeking a variety of additional relief beyond a replacement part, including compensatory, exemplary, and statutory damages, restitution, disgorgement of ill-gotten gains, and an injunction. (Am. Compl. ¶ 20.) That relief is unavailable.

### 2. Plaintiffs Fail To Adequately Plead Failure Of Essential Purpose Or Unconscionability Of The Warranty.

Acknowledging that the warranty on which they rely limits Goodman's obligations to providing a replacement part, Plaintiffs attack the enforceability of this limitation on two grounds: that it supposedly (i) causes the warranty to fail its essential purpose, and (ii) is unconscionable. (Am. Compl. ¶¶ 48, 91, 101.) But Plaintiffs' factual allegations do not support either contention.

#### a. The Limitation Does Not Cause The Warranty To Fail Its Essential Purpose.

Limiting a warranty to repair or replacement of a defective part causes a warranty to fail its essential purpose only if "effective repairs have not been performed or cannot be performed." 67A AM. JUR. 2D Sales § 250 (2003) (quoted in *J & E Constr.,* 2008 WL 3982683, at *6). "A remedy does not 'fail of its essential purpose' simply because it limits the recovery of a particular relief sought." *See Gooch v. E.I. du Pont de Nemours & Co.*, 40 F. Supp. 2d 863, 870 (W.D. Ky. 1999) (citing *Hill v. BASF Wyandotte Corp.*, 696 F.2d 287, 292 (4th Cir. 1982)). Instead, a repair-and-replacement warranty fails its essential purpose only if "the defect cannot be fully corrected by the repair or replacement of the defective part or product." *Gooch*, 40 F. Supp. 2d at 870; *see Rudd Constr. Equip. Co. v. Clark Equip. Co.*, 735 F.2d 974, 982 (6th Cir. 1984) (finding that the remedy failed its essential purpose where replacement of a hydraulic hose could not effectively restore a tractor that had burned); *Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 485 (Ky. Ct. App. 1979) (finding that no amount of repair or replacement parts could restore a truck with a bent frame to new condition).

Plaintiffs' attempt to plead around the warranty's limitation on this basis falls short. They offer no facts showing that a replacement part would not cure any alleged problem with their units. *See Moore v. Mack Trucks, Inc.*, 40 S.W.3d 888, 892 (Ky. Ct. App. 2001) (rejecting plaintiff's claim where no facts established that a replacement part or repair was insufficient to restore the product's function). In fact, Plaintiffs plead just the opposite—that repair and replacement *would* solve the alleged problems with their units. Pastor-Richard pleads that Precision Air told her that a replacement evaporator coil "would permanently solve the problem." (Am. Compl. ¶ 57, 60.) But she "refused to have her service contractor remove the defective evaporator in order to have it replaced," not because she disbelieved his diagnosis but in order to avoid incurring labor costs. McMeen, Meyers, and Brown also plead that their malfunctioning

14

units were repaired—using parts supplied by Goodman free of charge, per the warranty—and none allege that their units continue to fail.  (Am. Compl. ¶ 62-64, 68-69, 76.)

Plaintiffs have presented no facts showing that the allegedly defective parts in their Goodman units cannot be repaired or replaced, and in fact have pled precisely the opposite, highlighting Goodman's dedication to making good on its promise to furnish replacement parts free of charge.  Plaintiffs have thus failed to plead that the remedy under the manufacturer's warranty—express or implied—has failed of its essential purpose.

### b.        The Limitation Is Not Unconscionable.

Plaintiffs fare no better asserting that the warranty's limitation is unconscionable.  The unconscionability exception to the normal rules governing warranty application is meant to provide relief when "the terms are so extreme as to appear unconscionable according to the mores and business practices of the time and place," *Hooters of Am., Inc. v. Phillips*, 39 F. Supp. 2d 582, 613 (D.S.C. 1998) (internal quotation marks and citation omitted), or, put another way, when the terms are "so oppressive that no reasonable person would make them and no fair and honest person would accept them."  *Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 668 (S.C. 2007).

Plaintiffs come nowhere near pleading a viable claim of unconscionability.[2]  Pastor-Richard fails to plead any facts establishing, as she must under Kentucky law, either some procedural unconscionability or some substantive unfairness in the limitation.  *See Schnuerle v. Insight Commc'ns Co.*, 376 S.W.3d 561, 576 n.12 (Ky. 2012).  The other plaintiffs face an even more demanding test, as the courts of Texas, North Carolina, and South Carolina all require a

---

[2] To the extent that Plaintiffs intend to attack the warranty limitation on consequential damages (Am. Compl. ¶¶ 46-48), that claim fails as well.  Plaintiffs nowhere plead that the consequential-damages clause is either procedurally or substantively unconscionable.

plaintiff alleging unconscionability to prove procedural *and* substantive defects in the challenged agreement. *See Belanger v. BAC Home Loans Servicing, L.P.*, 839 F. Supp. 2d 873, 880 (W.D. Tex. 2011); *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362, 370 (N.C. 2008); *Simpson*, 644 S.E.2d at 668.

Procedural unconscionability "pertains to . . . the form of an agreement, including the use therein of fine print and convoluted or unclear language." *Schnuerle*, 376 S.W.3d at 576 (quoting *Conseco Fin. Serv. Corp. v. Wilder*, 47 S.W.3d 335, 343 n.22 (Ky. 2001)). There is nothing procedurally amiss here. The warranty is in the form of a one-page type-set document in readable font. *See id.* (*See generally* Ex. A.) The provision limiting liability—as Plaintiffs acknowledge in their Amended Complaint—appears in bold, capital type. (Am. Compl. ¶ 46; Ex. A.) The warranty text explains a buyer's remedies in plain language, and Plaintiffs clearly and repeatedly quote the warranty language. (*See, e.g.*, Am. Compl. ¶¶ 44-46 ("Goodman will furnish a replacement part, without charge for the part only, to replace any part that is found to be defective," and further, Goodman's "only responsibility, and [the buyer]'s only remedy" is a replacement part.).) Plaintiffs do not—and indeed, could not—allege that the warranty is illegible or convoluted. They can hardly now argue that the warranty limitations are not "stated such that purchasers of ordinary experience and education would not be able to understand [them], at least in [their] general import." *Schnuerle*, 376 S.W.3d at 576.

Substantively, the warranty also passes muster. The "substantive element [of unconscionability] focuses on whether the contract is so substantively unreasonable that it should be denied enforcement." *U.S. Achievement Acad., LLC v. Pitney Bowes, Inc.*, 458 F. Supp. 2d 389, 400 (E.D. Ky. 2006); *Schnuerle*, 376 S.W.3d at 576. But the warranty limitations do not leave buyers "without any substantial recourse for [their] loss." *Gooch*, 40 F. Supp. 2d at 871.

16

Plaintiffs recognize this, as they recount that Goodman provided (or would have provided, in Pastor-Richard's case) replacement parts consistent with the warranty. (Am. Compl. ¶ 59, 64, 70, 76). The limited warranty does not contain any "unique characteristics to distinguish [it] from any other standard [limited warranty]" either. *Schnuerle*, 376 S.W.3d at 577. Notably, Plaintiffs plead no facts showing that the Goodman warranty is in any way less favorable than what is standard in the industry. *See, e.g., Neuser v. Carrier Corp.*, No. 06-C-645-S., 2007 WL 1470855, at *3 (W.D. Wis. May 15, 2007) (discussing Carrier warranty limiting remedy to replacement of any defective part; "None of these warranties include labor or other costs incurred for diagnosing, repairing, removing, installing, shipping, servicing or handling of either defective parts, or replacement parts, or new units."). Plaintiffs' assertion that the warranty here is so oppressive that no reasonable company would make it and no fair and honest person would accept it is thus a non-starter.

Because the Amended Complaint does not plead facts sufficient to show procedural and substantive unconscionability, Pastor-Richard cannot get around the warranty limitations in this way. And the unconscionability claims of McMeen, Meyers, and Brown must fail if they have not pled *either* procedural *or* substantive defects in the warranty limitations. *See Belanger*, 839 F. Supp. 2d at 880; *Tillman*, 655 S.E.2d at 370; *Simpson*, 644 S.E.2d at 668. They, like Pastor-Richard, have pled neither.

**C.    Plaintiffs Pastor-Richard And Brown May Not Maintain Breach of Warranty Claims Because They Lack The Essential Element Of Privity.**

The breach-of-warranty claims brought by plaintiffs Pastor-Richard and Brown fail for another, independent reason: They bought houses, not air conditioners, and thus neither has pled the essential element of privity.

*Pastor-Richard's lack of privity*:   Kentucky law is clear that there can be no warranty claim of any kind without privity between the parties.   *See, e.g.*, *Roberts v. Solideal Tire, Inc.*, No. 06-14-DLB, 2007 WL 2990536, at *2 (E.D. Ky. Oct. 10, 2007) ("Claims for breach of warranty under K.R.S. § 355.2-313, breach of implied warranty under K.R.S. § 355.2-314, and breach for the implied warranty of fitness for a particular purpose under K.R.S. § 355.2-315 all require privity between a claimant and a defendant.") (copies of unreported cases are attached as Exhibit B); *Williams v. Fulmer*, 695 S.W.2d 411 (Ky. 1985) (same).   Accordingly, any and all warranties attaching to the Goodman unit in Pastor-Richard's home extend only to the contractual buyer(s), if any.   *See Compex Int'l Co.*, 209 S.W.3d at 465 ("[A] 'seller's' warranty protections are only afforded to 'his buyer.'"); *see also Allen v. Abbott Labs.*, No. 11-146-DLB, 2012 WL 10508, at *5 (E.D. Ky. Jan 3, 2012) (holding that a plaintiff-buyer claiming breach of warranty "must establish that [he or she] enjoyed privity of contract with the defendant-seller against whom the . . . warranty claim is asserted") (internal quotation marks omitted).

Pastor-Richard has failed to (and cannot) plead the buyer-seller relationship necessary to her warranty claims.   In fact, she affirmatively pleads a *lack* of privity, stating that she moved into a house that "came equipped with" a Goodman air conditioner as a fixture.   (Am. Compl. ¶ 53.)   Other than her correspondence with Goodman Global Group's CEO (*id.* ¶¶ 58-59), Pastor-Richard pleads no connection whatsoever between herself and any Defendant.   She does not plead that she and any Defendant were parties to the same contract, that any Defendant sold her the air conditioner at issue, or that she paid money directly to any Defendant for any purpose. There is no privity here.[3]   Without this fundamental buyer-seller relationship, she cannot

---

[3] Pastor-Richard does not meet any exception to the statutory requirement of privity.  The Kentucky U.C.C. provides for only a narrow exception to the privity requirement for a person "in the family or household of [the seller's] buyer or who is a guest in his home."  Ky. Rev. Stat. § 355.2-318; *see also Allen*, 2012 WL 10508, at *6;

18

maintain any claim for breach of warranty—express or implied.  *Allen*, No  2012 WL 10508, at *6.

       *Brown's lack of privity*:   Brown similarly has failed to establish privity with regards to the Goodman unit on which his claim of damages is based.  The law of South Carolina, where Brown lives, requires privity for the maintenance of a claim based on an implied warranty.  *See Odom v. Ford Motor Co.*, 95 S.E.2d 601, 603-04 (S.C. 1956) ("The general rule is that privity of contract is required in an action for breach of an implied warranty.")  But Brown has not pled facts establishing the necessary privity.  He alleges that before he moved into his newly-renovated home, two Goodman units were installed as part of the renovation.  (Am. Compl. ¶ 71.)  After moving into the home, he replaced one of the Goodman units with a new unit.  (*Id.*)  His home therefore currently contains one Goodman unit that he did not purchase ("Unit 1") and one Goodman unit that he did purchase ("Unit 2").   He had one repair-and-replacement procedure performed on Unit 2, the cost of which was covered by warranty.  (*Id.* ¶ 74.)  He pleads that he has had two repairs done on Unit 1, and it is these repairs that, according to the Amended Complaint, resulted in out-of-pocket costs to him (including labor costs and additional refrigerant; the replacement parts were, per the warranty, provided by Goodman).  (*Id.* ¶¶ 73-76.)  Because Brown did not purchase Unit 1, he cannot establish privity between him and any Defendant as to the unit that forms the basis for his claims.  His breach-of-warranty claim therefore fails.

---

(continued…)

*Childress v. Interstate Battery Sys. of Am. Inc.*, No. 1:09CV-54-M, 2010 WL 600023, at *5 (W.D. Ky. Feb. 18, 2010) (quoting *Compex Int'l*, 209 S.W.3d at 465) ("Although the statute provides an exception to the privity requirement, that exception is limited to its clear terms and includes only those individuals who enjoy the specified relationship with the buyer.").

**D.      Plaintiffs' Claim For Breach Of Implied Warranty Of Merchantability Likewise Fails For Independent Reasons.**

The deficiencies catalogued above require dismissal of all of the warranty claims brought by all four Plaintiffs.  But the claim for breach of the implied warranty of merchantability has additional legal deficiencies of its own, in particular with respect to plaintiffs Meyers and Brown.

Under the Uniform Commercial Code—and the state codes of Kentucky, Texas, North Carolina, and South Carolina—the warranty of merchantability that is implied in a contract for sale of goods requires that the goods "are fit for the ordinary purposes for which such goods are used."  U.C.C. § 2-314(2)(c); Ky. Rev. Stat. Ann. § 355.2-314(2)(c); Tex. Bus. & Com. Code Ann. § 2.314(b)(3); N.C. Gen. Stat. § 25-2-314(2)(c); S.C. Code. Ann. § 36-2-314(2)(c).  Courts generally consider "the 'ordinary use' of a [product] . . . in broad terms." *In re Sigg Switzerland (USA), Inc. Aluminum Bottles Mktg. & Sales Practices Litig.*, MDL No. 2137, 2011 WL 159940, at \*4 (W.D. Ky. Jan. 12, 2011); *see also Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288-JF, 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009); *Strauss v. Ford Motor Co.*, 439 F. Supp. 2d 680, 685 (N.D. Tex. 2006).  For example, the ordinary purpose of a washing machine is to "clean[] clothes," *Tietsworth*, 2009 WL 3320486, at \*12, and thus a claim for breach of an implied warranty of merchantability fails unless the washing machine is unable to clean clothes. *Id.* (finding, where washing machines stopped in mid-cycle and had to be restarted, that plaintiffs' claims failed because they did not allege they couldn't "use their [m]achines at all or that they [were] forced to replace their [m]achines with other washers that are capable of washing clothes").

Neither Meyers nor Brown has pled that the alleged defects in his Goodman air conditioner rendered the unit totally unfit for the ordinary purpose of "emitting cool air and cooling consumers' homes."  (Am. Compl. ¶ 98.)  Meyers never says that his Goodman unit

stopped providing cool air.  He attempts to plead around this crucial factual deficiency by alleging that his unit failed to cool his house "effectively."  But this vague word is insufficient to support a claim of breach of the implied warranty of merchantability.[4]  (Am. Compl. ¶¶ 66-67.) Brown's claim fares even worse:  The only allegations he can muster are that he "noticed that [one of his Goodman units] was running for an unusually long amount of time," (*Id.* ¶¶ 73-74), and that, later, he "noticed that his previous two electricity bills had increased significantly."  (*Id.* ¶ 75.)  These allegations are a far cry from the required showing that Brown's Goodman units are unfit to cool his home.

An air conditioner that provides cool air, or a heating unit that provides warm air, even in lesser quantities or strength than a consumer would like, has not failed to meet its ordinary purpose.  "'[M]erchantable' is not a synonym for perfect."  *Lancaster Glass Corp. v. Philips ECG, Inc.*, 835 F.2d 652, 661 (6th Cir. 1987) (holding that defendant "did not breach the warranty of merchantability by tendering [products] which were not perfectly suitable for [a] new technology").  Nor is an air conditioner or heating unit that allegedly requires additional refrigerant or replacement of its evaporator coils "useless."  *See Tietsworth*, 2009 WL 3320486, at *12 ("The mere manifestation of a defect by itself does not constitute a breach of the implied warranty of merchantability.  Instead, there must be a fundamental defect that renders the product unfit for its ordinary purpose.").  Meyers and Brown have failed to plead sufficient facts to support their claims.

Moreover, all four plaintiffs plead that the alleged glitches with their air conditioners have been fixed—or, in the case of Pastor-Richard, easily could be fixed—by service

---

[4] After repeating this vague formulation twice, Meyers alleges that his Goodman unit "once again failed to cool his house."  (Am. Compl. ¶ 68.)  Here, too, Meyers has failed to allege clearly that his air conditioner stopped working altogether—and in fact, the referral back to the previous allegations of "ineffective" cooling of the house plainly suggest that this time, too, the air conditioner continued to emit cool air.

21

technicians.  (Am. Compl. ¶¶ 57, 63, 69, 76.)  This itself establishes that the air conditioners in question are fit for the purpose of providing cool air.

## II.   THE CONSUMER-PROTECTION-STATUTE CLAIMS FAIL, AS WELL.

### A.   Pastor-Richard's   Kentucky   Consumer   Protection   Act   Claim   Is Unsustainable.

Plaintiffs attempt to plead violation of the Kentucky Consumer Protection Act ("KCPA"), Ky. Rev. Stat. Ann. §§ 367.110 *et seq.*  (Am. Compl. ¶¶ 102-09.)  And while they generically allege that violation of the Kentucky law "caused damages to plaintiffs and members of the class and subclasses" (Am. Compl. ¶ 109), the only named Plaintiff who can bring a KCPA claim is Kentucky resident Pastor-Richard.

Plaintiff Pastor-Richard accuses "Goodman" (without even attempting to specify what Goodman entity did what) of committing fraud in violation of the KCPA by "selling, marketing, and distributing the Goodman Units with defective evaporator coils" as well as with "unconscionable warranty limitations." (Am. Compl. ¶¶ 104-05.)  She alleges that Defendants knew, but "conceal[e]d and/or fail[e]d to inform plaintiff . . . [,] that the Goodman Units were defective," and that Goodman falsely represented the quality of its products and its warranties. (Am. Compl. ¶¶ 106-08.)  Pastor-Richard's KCPA claim fails for three independent reasons: (a) she lacks standing, (b) she filed her claim after the two-year statute of limitations expired, and (c) she otherwise fails to plead facts establishing the essential elements of her claim.

### 1.   Pastor-Richard Lacks Standing To Assert A KCPA Claim.

The same facts underlying the privity problem with Pastor-Richard's warranty claims also defeat her KCPA claim.  "The language of the KCPA 'plainly contemplates an action by a purchaser against his *immediate* seller.'" *Todd v. Capital One Fin. Corp.*, No. 3:07-CV-189-S, 2007 WL 3306097, at *5 (W.D. Ky. Nov. 6, 2007) (quoting *Tallon v. Lloyd & McDaniel*, 497 F.

Supp. 2d 847, 854 (W.D. Ky. 2007)) (emphasis added); *Anderson v. Merck & Co.*, 417 F. Supp. 2d 842, 848 n.7 (E.D. Ky. 2006) (noting "[t]he language of the statute plainly contemplates an action by a purchaser against []his immediate seller" (first alteration in original) (internal quotation marks omitted)).  Thus, "a valid claim under the KCPA requires privity of contract between the parties." *Mass. Mut. Life v. Watson*, Nos. 12-19-KKC, 12-151-JBC, 2012 WL 4936504, at *3 (E.D. Ky. Oct. 16, 2012).

For all the reasons discussed above, *see supra* I.C, and particularly in light of Pastor-Richard's own explanation that her house "*came equipped with* a Goodman AC," (Am. Compl. ¶ 53) she cannot bring this claim. *Todd*, 2007 WL 3306097, at *5.

### 2. Pastor-Richard's Claim Is Also Time-Barred.

Pastor-Richard's KCPA claim is also barred by the applicable statute of limitations.  The KCPA requires a plaintiff to bring any claim "within two (2) years after the violation of KRS 367.170."  Ky. Rev. Stat. § 367.220(5).  Kentucky courts have interpreted that provision as imposing an "absolute two-year statute of limitations" to which the discovery rule does not apply.  *Cook v. State Farm Mut. Auto. Ins. Co.*, No. 2002-CA-000801-MR, 2004 WL 2011375, at *2, *4 (Ky. Ct. App. Sept. 10, 2004).  Accordingly, the statute begins to run from the date of the conduct constituting the violation.  *Ward v. Appalachian Fed. Credit Union*, No. 06-CV-48-DLB, 2006 WL 897224, at *3 (E.D. Ky. Apr. 6, 2006).

Because Pastor-Richard pleads that she moved into her house (with the air conditioning unit already installed) in November 2009 (Am. Compl. ¶ 53), any "selling, marketing, [or] distributing" of the subject air conditioner, as well as any allegedly false representations about the quality of the air conditioner or the warranty, necessarily occurred no later than November 2009.  Under § 367.220(5), Pastor-Richard was required to bring any claim by November 2011. She failed to do so.

23

The same is true of Pastor-Richard's allegation that one or all of the Defendants violated the KCPA by "concealing and/or failing to inform plaintiff . . . that the Goodman ACs were defective." (Am. Compl. ¶ 106.)  She asserts that "Goodman was aware that the evaporator coils in the Goodman Units sold since at least January 2007 were defective."  (Am. Compl. ¶ 77.) This tortured phrasing fails to conceal that the two-year limitations period has long since run. Pastor-Richard's own allegation of fraud is premised on the assertion that Defendants knew that their air conditioners were defective at the time the unit installed in her home was sold—in other words, by November 2009 at the latest.  According to Pastor-Richard's timeline, therefore, Defendants' alleged failure to disclose the purported defect occurred no later than November 2009, and any KCPA claim based on this failure expired by November 2011.  Pastor-Richard's KCPA claim fails on this ground, as well.

### 3.   Pastor-Richard Fails To Plead Facts Establishing The Essential Elements Of Her Claim.

In addition to the lack of privity and untimeliness problems with Pastor-Richard's KCPA claim, her claim is triply doomed because she also fails to plead facts establishing its essential elements.  The KCPA makes it unlawful to participate in "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."  Ky. Rev. Stat. § 367.170(1).  The statute creates a private right of action for "[a]ny person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers an ascertainable loss of money or property . . . as a result of the use or employment by another person of a method, act or practice declared unlawful by [§] 367.170."  *Id.* § 367.220(1).

> Thus, to recover under the KCPA, [Pastor-Richard] would have to prove: (1) [she] bought the [Goodman Unit] primarily for personal, household, or family purposes; (2) [Goodman] engaged in an unfair, false, misleading, or deceptive act; and (3) [Pastor-Richard] suffered actual damages as a result of the violation of the KCPA.

24

*C.A.R.S. Prot. Plus, Inc. v. Larry Stigers Equip., Trailers & Trucks, LLC*, No. 2007-CA-001542-MR, 2009 WL 2971542, at *3 (Ky. Ct. App. Sept. 18, 2009).

Pastor-Richard has failed to allege facts sufficient to make out the required elements of a KCPA claim. Furthermore, because her KCPA claim sounds in fraud, her limited factual assertions fail the heightened particularity requirements for pleading fraud claims. Pastor-Richard's KCPA claim should be dismissed on this basis.

First, as discussed *supra*, Pastor-Richard has failed to show that she actually bought a Goodman Unit. Her sole allegation of a Kentucky-related purchase is that of a house, not of a Goodman product. (Am. Compl. ¶ 53.) She has therefore failed to plead the first essential element of her KCPA claim.

Second, she also fails to show how Goodman's alleged bad acts caused her injury. She claims that Goodman's "acts or practices caused damages to plaintiffs and members of the class and subclasses," (Am. Compl. ¶ 109), but she has not plausibly shown how any relevant plaintiff was injured as a result of this allegedly unlawful behavior. Even if the allegations were true—which they are not—that Defendants sold units with defective coils, (*id.* ¶ 104), sold units with unconscionable warranties, (*id.* ¶ 105), concealed unit defects, (*id.* ¶ 106), misrepresented the quality of its units, (*id.* ¶ 107), or misrepresented the quality of its warranties, (*id.* ¶ 108), the Amended Complaint contains nothing that plausibly suggests that Pastor-Richard was injured *as a result of* that alleged conduct. The facts as described in the amended complaint suggest just the opposite: Pastor-Richard purchased her house equipped with a Goodman Unit, without any apparent thought to the quality of the unit or of its warranties. (*Id.* ¶ 53.) And when a problem with her air conditioner allegedly developed, she neglected to pursue her exclusive remedy under

25

the warranty.  (*Id.* ¶ 60.)  The facts as pleaded do not plausibly suggest that she was injured in any way as a result of the conduct of which she complains.

Additionally, courts generally treat claims under the KCPA as sounding in fraud, which triggers Federal Rule of Civil Procedure 9(b).  *See Hollon v. Consumer Plumbing Recovery Ctr.*, No. 5:05-414-JMH, 2006 WL 1360805, at *5 (E.D. Ky. May 14, 2006) (analyzing portions of KCPA claim under rule 9(b) that sounded in fraud); *Anderson*, 417 F. Supp. 2d at 848 n.6 (applying Rule 9(b) to misrepresentation claims, when plaintiff alleged that the defendant "'knew or should have known' about the drug's defects").  Pastor-Richard must therefore plead "with particularity" the basis for her allegations that Goodman's practices were either objectively untrue or unlawful, that one or all of the Goodman Defendants knew or should have know that they were committing fraud, and that because of it Pastor-Richard (and other consumers) suffered an ascertainable loss that they otherwise would not have.

Plaintiffs' attempts at curing the glaring pleading defects in their initial complaint are unavailing, as they still have not succeeded in meeting the exacting pleading standards applicable here.[5]  To satisfy Rule 9(b), a "plaintiff must allege (1) the time, place, and content of the alleged misrepresentation [or omission], (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury."  *Chesbrough v. Visiting Physicians Ass'n*, 655 F.3d 461, 467 (6th Cir. 2011) (internal quotation marks omitted).  Rather than adhering to the requirements of Rule 9, Plaintiffs continue to rely on vague and conclusory allegations of deception.  (Am. Compl. ¶ 3 (Goodman "knew, or reasonably should have known'" about an alleged defect in the evaporator coils), ¶¶ 47, 49, 80, 106, 118, 124 (Goodman "fail[ed] to inform consumers" about the alleged

---

[5] The allegations about Defendants' actions discussed herein are relevant to the claims of all Plaintiffs, not just Pastor-Richard.

defect), ¶ 20 (Goodman "concealed from and/or failed to disclose" the problems with the Goodman Units).)  Although Plaintiffs have attempted to cure their deficient claims by adding some facts, their averments still undermine Rule 9(b)'s purpose.  *Hollon*, 2006 WL 1360805, at *5 (dismissing fraud-based action to extent it was based on fraudulent acts because of lack of particularity in pleadings); *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985) ("Even where allegations are based on information and belief, supporting facts on which the belief is founded must be set forth in the complaint . . .  even when the fraud relates to matters peculiarly within the knowledge of the opposing party.") (citation omitted).

Most notably, Plaintiffs allege nothing but the most conclusory of facts regarding any "fraudulent intent" on behalf of any Defendant.  While "intent" and other "conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), a "plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on its face.'"  *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  Here, beyond the vague assertion that some unnamed customers had complained about unspecified products (Am. Compl. ¶ 3), Plaintiffs do not plead facts plausibly suggesting that "Goodman" knew that the evaporator coils were supposedly defective.  Likewise, Plaintiffs offer mere conclusions that "Goodman" intended anything with regard to Plaintiffs other than a desire that people buy Goodman products. (*Id.* ¶51.)  Because the Amended Complaint "does not plead any fraudulent acts with particularity, . . . the KCPA claim" must be dismissed.  *Hollon*, 2006 WL 1360805, at *5.

Plaintiffs' generic use of  "Goodman" proves the point.  With the bare assertion that "[e]ach defendant acted as the principal of or agent for other defendants with respect to the acts, violations, and common course of conduct alleged," (Am. Compl. ¶ 12), Plaintiffs lump

27

Defendants into one "Goodman" pile.  The Defendants (and the Court) are left to their own imaginations as to what Plaintiff intends to plead.  Indeed, Plaintiff does not plead which, if any, Defendant did what to whom, nor does she describe with any semblance of particularity the intentional or voluntary acts committed by which Defendant, if any, that caused them or anyone else a definable injury.  This is insufficient to satisfy Rule 9(b).  *See Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.  In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[] in the alleged fraudulent scheme." (internal quotation marks and citations omitted)).

In the same way, Plaintiffs do not plead with particularity actionable conduct by any Defendant.  To prove a violation of the KCPA, a plaintiff must also establish that "[a defendant]'s actions were intentional or grossly negligent."  *Sparks v. Re/Max Allstar Realty*, 55 S.W.3d 343, 348 (Ky. Ct. App. 2000) (citing *Capitol Cadillac Olds, Inc., v. Roberts, Ky.*, 813 S.W.2d 287, 291 (1991)); *Harman v. Sullivan Univ. Sys., Inc.*, No. 03-738-C, 2005 WL 1353752 (W.D. Ky. June 6, 2005).  While Plaintiffs claim that "Goodman" "knew . . . that the evaporator coils in its air conditioners were defective" and "refused to inform consumers" (Compl. ¶ 3), these conclusory allegations must be disregarded in determining the facial plausibility of Plaintiff's KCPA claim. *Iqbal*, 556 U.S. at 678.  Considering the best of her pleaded facts, she does not plausibly suggest that some Defendant either intentionally or "conscious[ly] and voluntar[ily]" marketed or sold air conditioners containing defective evaporator coils to her or any other Kentucky plaintiff.  *See Sparks*, 55 S.W.3d at 348 (defining gross negligence in

28

addressing a KCPA claim).  Because she has failed to plead elements essential to her claim, Pastor-Richard's KCPA claim must be dismissed.

**B.**      **McMeen Fails to Plead a Claim of Violation of the Texas Deceptive Trade Practices and Consumer Protection Act.**

Plaintiffs' next claim—an alleged violation of the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code. Ann. §§ 17.41, *et seq.*—also fails. This claim is available only to Plaintiff McMeen, who pleads that Defendants violated the DTPA's prohibition on "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," *see* § 17.46(a), by knowingly misrepresenting the "characteristics, uses, or benefits" of Goodman air conditioners as well as their "standard, quality, or grade"; by failing to disclose defects, with the intended of inducing purchases of the defective air conditioners; by breaching express and implied warranties; and by engaging in various unconscionable actions. (Am. Compl. ¶¶ 113-18).  But McMeen filed his suit outside the limitations period and, like Pastor-Richard, has failed to plead essential elements of his claim.[6]

**1.**      **McMeen's Claim is Time-Barred.**

The Texas DTPA requires that all DTPA actions "must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice."  § 17.565.  All of the actions that McMeen alleges Goodman took in violation of the DTPA—for example,

---

[6] McMeen also does not allege compliance with the DTPA's pre-suit notice requirement.  The DTPA provides that any claimant seeking damages must, "as a prerequisite to filing a suit," give written notice to the potential defendant at least 60 days before filing, "advising the [defendant] in reasonable detail of the consumer's specific complaint" as well as the amount of damages sought and expenses expected to be reasonably incurred during litigation.  § 17.505(a).  In addition, a consumer filing a putative class-action suit seeking damages under the DTPA must send to the state's consumer protection division a copy of the notice provided to the alleged violator, at the same time that notice is given.  § 17.501.  McMeen has not pled these requirements.

misrepresentations about the quality of Goodman air conditioners; failure to disclose defects; selling, marketing, and distributing defective products—occurred at or prior to the point of purchase. (Am. Compl. ¶¶ 113-18.) McMeen pleads that he purchased his Goodman unit on January 18, 2008. (*Id.* ¶ 61.) The period in which he was free to file a DTPA claim therefore closed on January 18, 2010.

Even the DTPA's incorporation of the discovery rule cannot save McMeen's claim. "The discovery rule is a limited exception to the statute of limitations," that "should be applied only when it is difficult for the injured party to learn of the negligent act or omission." *Sw. Olshan Found., LLC v. Gonzales*, 345 S.W.3d 431, 437 (Tex. App. 2011). Under the DTPA, "accrual occurs when the plaintiff knew or should have known through the exercise of reasonable diligence of the wrongful injury. Therefore, a plaintiff need not know the full extent of the injury before limitations begin to run." *Id.* Rather, "[k]nowledge of facts, conditions, or circumstances *that would cause a reasonable person to make inquiry* leading to the discovery of the concealed cause of action is equivalent to knowledge of the cause of action for limitation purposes." *Id.* at 438 (emphasis added); *see KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999) (rejecting lower court's ruling that a claim does not accrue until plaintiff knows not only of the injury, but the specific nature of each wrongful act that may have caused the injury, and reaffirming instead that "accrual occurs when the plaintiff knew or should have known of the wrongfully caused injury.").

McMeen was on inquiry notice when his air conditioning unit allegedly "stopped emitting any cool air" in August 2010. (Am. Compl. ¶ 62.) He called a service technician, who allegedly told him that the evaporator coil in his unit "was leaking and had failed, and that it needed to be replaced." (*Id.*) By McMeen's own account, therefore, he became aware at that

time of a problem with his air conditioning unit, both because of his own observation of its alleged defect and because a service technician informed him of a "fail[ure]." At a minimum, this put him on inquiry notice. McMeen therefore was required, but failed, to bring his claim by August 2012 at the latest. He cannot maintain a DTPA claim now.

### 2. McMeen Fails To Plead Sufficient Facts To Make Out The Elements Of A DTPA Claim.

Finally, even if McMeen had complied with the statutory notice requirement and statute of limitations, his DTPA claim could not survive because he has failed to plead the necessary facts. As with claims brought pursuant to the KCPA, a DTPA claim is treated as sounding in fraud and is subject to the heightened pleading requirements of Rule 9(b). *See SHS INV. v. Nationwide Mut. Ins. Co.*, 798 F. Supp. 2d 811, 815 (S.D. Tex. 2011) (and cases cited therein). McMeen must therefore plead with particularity that: 1) he is a consumer; 2) the Defendants engaged in false, misleading, or deceptive acts; and 3) those acts were the producing cause of McMeen's damages. *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). McMeen has not pled facts sufficient to support at least two of these elements: He has not alleged with particularity acts that violate the DTPA, and he has not shown causation.

As for the requirement that he plead with particularity the false, misleading, or deceptive acts alleged to constitute a violation of the DTPA, McMeen alleges that Goodman failed to disclose to purchasers that their air conditioners were defective, and that this failure to disclose "was intended to induce plaintiffs and members of the class and subclasses to purchase a Goodman Unit." (Am. Compl. ¶ 115.) But, as discussed *supra*, II.A.3, the amended complaint alleges nothing but the most conclusory of facts regarding any "fraudulent intent" on behalf of any Defendant. Moreover, McMeen fails to plead facts sufficient to satisfy prong three, which requires a DTPA plaintiff to show that the complained-of bad acts were the producing cause of

31

his damages.    McMeen offers only conclusory statements, such as that "[a]ll of these representations [on Goodman's website] were intended to induce, and did induce, plaintiffs and members of the class and subclasses to purchase Goodman Units," (Am. Compl. ¶ 52), and "Plaintiffs and other members of the class and subclass relied on Goodman's representations to their detriment."  (*Id.* ¶ 116.)   These conclusory allegations are insufficient even under Rule 8/*Twombly*, much less do they meet the burden of pleading with particularity precisely when or how he relied on these representations, or how those representations caused the damages he claims to have incurred.

McMeen also pleads a claim for damages under the DTPA based on the Goodman Defendants' alleged breach of express and implied warranties, and alleged unconscionable actions.  (Am. Compl. ¶ 117-18.)  But, as Defendants have already shown, McMeen—like all of the plaintiffs—has no claim for breach of warranty.  *See supra*, at I.  Nor has McMeen plausibly pled that Defendants committed any actions that are "unconscionable" within the meaning of the DTPA.  The DTPA defines an "unconscionable action or course of action" as "an act or practice, which ... takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."  Tex. Bus. & Com. Code § 17.45(5). "To prove an unconscionable action or course of action, a plaintiff must show that the defendant took advantage of his lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated."  *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001) (citation and internal quotation marks omitted) (emphasis added).  McMeen's allegations come nowhere near showing unconscionability, which Texas courts reserve for circumstances far more egregious than what Plaintiffs attempt to allege here.  *See, e.g.*, *Sanchex v. Guerrero*, 885 S.W.2d 487 (Tex. App. 1994) (evidence supported jury's finding of unconscionable action under the

DTPA when realtor failed to inform first-time home buyers, who asked several times about prior owners of home before deciding to purchase it, that previous occupant was accused of molesting children in the home).  McMeen has pled no "flagrant" or "complete and unmitigated" "unfairness" in his purchase of several Goodman units and their subsequent repair pursuant to warranty.  His DTPA claim should be dismissed.

### C.    Meyers's Claim Of Violation Of The North Carolina Unfair And Deceptive Trade Practices Act Also Fails.

Plaintiffs claim that "Goodman" "committed unfair or deceptive acts or practices in or affecting commerce" (Am. Compl. ¶ 122), in violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1.  Once again, the framing of the claim is misleading, as a claim under a North Carolina state statute is available only to Plaintiff Meyers.  And even as to Meyers the claim fails.  "The necessary elements for a claim under N.C. Gen. Stat. § 75-1.1 are: '(1) an unfair or deceptive act or practice, (2) in or affecting commerce, which (3) proximately caused actual injury to the claimant.'"  *Melton v. Family First Mort. Corp.*, 576 S.E.2d 365, 368 (N.C. App. 2003) (quoting *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 35 , 568 S.E.2d 893, 901 (2002)).  "[A]s to these elements, some type of egregious or aggravating circumstances must be alleged and proved before the Act's provisions may take effect."  *Carcano v. JBSS, LLC*, 684 S.E.2d 41, 49-50 (N.C. App. 2009) (alterations and internal quotation marks omitted).  Meyers has neither pled facts adequate to establish the elements of the claim nor alleged an injury sufficient to establish standing.

### 1.    Meyers Fails To Plead Facts Establishing The Necessary Elements of An "Unfair Or Deceptive" Act Or Practice.

Meyers's UDTPA claim should be dismissed because Plaintiffs have failed to allege anything more than conclusory statements regarding the "unfair or deceptive" nature of Defendants' acts and practices.  Plaintiffs merely restate the element of § 75-1.1(a) by asserting

33

vaguely and in the disjunctive that the Goodman Defendants committed "unfair or deceptive acts or practices" for each of the various alleged wrongful activities. (Am. Compl. ¶¶ 122-126.)

Whether a trade practice is unfair or deceptive is an issue of law to be decided by the court. Melton, 576 S.E.2d at 368 (citing Eastover Ridge, L.L.C. v. Metric Constructors, Inc., 533 S.E.2d 827, 830 (N.C. App. 2000)). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. A practice is deceptive if it possesses the tendency or capacity to mislead, or creates the likelihood of deception." Melton, 576 S.E.2d at 368 (alterations, citations, and internal quotation marks omitted); see also Carcano, 684 S.E.2d at 50. And because Plaintiffs' allegations of violations of § 75-1.1 are rooted in allegations of fraud, (see Am. Compl. ¶¶ 38, 41, 47-52, 124-26), Plaintiffs must plead the elements of the alleged violation with particularity pursuant to Federal Rule of Civil Procedure 9(b). Bon Aqua Intl., Inc. v. Second Earth, Inc., No. 1:10-CV-169, 2013 WL 357469 (M.D.N.C. Jan. 29, 2013). As explained in detail above, Plaintiffs have failed to meet this heightened pleading standard. *See supra* II.A.3. Their UDTPA claim—like their KCPA and DTPA claims—fails for lack of particularity.

### 2.    Meyers Fails To Allege An Injury And Therefore Has No Standing.

Meyers has failed to establish a concrete injury in fact, as required to sustain his UDTPA claim. "An injury in fact is required for both standing and to support claims under [§ 75-1.1] and fraud. An injury in fact is 'an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" *Coker v. DaimlerChrysler Corp.*, 617 S.E.2d 306, 310 (N.C. Ct. App. 2005). Meyers asserts as his injury the labor costs he incurred to repair and replace his evaporator coil with a new coil provided to him free of charge by the Goodman Defendants under the warranty. (Am. Compl. ¶¶ 68-70.)

34

However, as noted above, under the warranty the Goodman Defendants were obligated to supply a replacement part free of charge—which they did—but not to provide the costs associated with installing the replacement part.  Meyers therefore had no legally protected interest in being compensated for those labor costs, which he specifically and contractually bore under the warranty.  Moreover, all other labor allegedly performed on Meyers' air conditioner was performed "free of charge" by his technician; he has alleged no other costs incurred by him.  (*Id.* ¶¶ 66-67.)  Meyers has failed to state an injury sufficient to give him standing to bring a claim under § 75-1.1.  This Court should dismiss the UDTPA claim.

## III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT.

Plaintiffs fare no better with their final claim, for unjust enrichment.[7]  That claim must be dismissed because an unjust-enrichment claim is unavailable to redress alleged violations of warranty rights  A plaintiff may not simultaneously maintain claims that sound in contract and in equity.  A claim of unjust enrichment lies in equity, *see U.S. v. Stevens*, 605 F. Supp. 2d 863, 870 (W.D. Ky. 2008), while breach of warranty claims like those raised here are contract claims, *see* 18 Williston, *A Treatise on the Law of Contracts*, § 52:45 (4th ed. 1990) ("an express warranty is a creature of contract"); *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 705 (Tex. 2008) (when damages claimed on an alleged breach of implied warranty "are purely economic, the claim sounds in contract").  Equitable claims are not available to plaintiffs who seek relief under a contract that was allegedly breached.  "That is because parties should be bound by their express agreements. When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement."  *See Fortune Prod. Co. v. Conoco,*

---

[7] Plaintiffs do not say under what State's law they are claiming unjust enrichment.  We assume for purposes of this motion that the claim is under the law of each Plaintiff's State of residence—*i.e.*, Kentucky, North Carolina, South Carolina, and Texas.

*Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). This basic principle disposes of Plaintiffs' unjust enrichment claim. Because they are seeking to recover on warranty claims, they may not maintain an unjust enrichment claim as well. *See Shane v. Bunzl Distribution USA, Inc.*, 200 F. App'x 397, 404 (6th Cir. 2006) ("Under Kentucky law, the doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed." (citation and internal quotation marks omitted)); *Fortune Prod. Co.*, 52 S.W.3d at 684 (no recovery on unjust enrichment theory "when a valid, express contract covers the subject matter of the parties' dispute"); *Booe v. Shadrick*, 369 S.E.2d 554, 556 (N.C. 1988) ("If there is a contract between the parties the contract governs the claim and the law will not imply a contract" by allowing recovery on an unjust enrichment claim); *see also Fed. Sav. & Loan Ins. Corp. v. Quality Hotels & Resorts, Inc.*, 928 F.2d 399 (4th Cir. 1991) ("[T]he purpose and effectiveness of the UCC would be substantially impaired if interests created in compliance with UCC procedure could be defeated by application of the equitable doctrine of unjust enrichment.") (citation and internal quotation marks omitted). The Court should thus dismiss Plaintiffs' claim of unjust enrichment.

## CONCLUSION

Plaintiffs fail to meet the most basic pleading requirements for stating a cause of action on their own behalf, let alone on behalf of a putative class and subclasses. The Court should dismiss Plaintiffs' Amended Complaint in its entirety.

36

Respectfully submitted,

**/s/ Jeffrey C. Mando**
Jeffrey C. Mando, Esq. (#43548)
ADAMS, STEPNER,
WOLTERMANN & DUSING, PLLC
40 West Pike St.
Covington, KY 41012
859.394.6200
859.392.7263 – Fax
jmando@aswdlaw.com

**/s/ Theodore M. Grossman**
Theodore M. Grossman, Esq. (OH #37591)
(admitted pro hac vice)
Louis A. Chaiten, Esq. (OH #72169)
(admitted pro hac vice)
JONES DAY
901 Lakeside Avenue
Cleveland, OH  44114
216.586.3939
216.579.0212 – Fax
tgrossman@jonesday.com
lachaiten@jonesday.com

*Attorneys for Defendants, Goodman Global, Inc., Goodman Manufacturing Company, L.P., and Goodman Company, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, with attached Memorandum of Law in Support of the Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint and exhibits thereto, was filed electronically on this the **25**th day of February, 2013, through the Court's electronic filing system.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

**/s/ Jeffrey C. Mando**
Counsel for Defendants

883598.1

37